UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOHN VARNDELL, JR.,

                    Petitioner,                    Case No. 2:26-cv-12

v.                                                 Honorable Sally J. Berens

JAMIE CORRIGAN,

                    Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. The Court will grant Petitioner leave to proceed *in forma pauperis*.

Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.13.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding: the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment."). Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court

will dismiss the petition without prejudice because review is barred by the doctrine of procedural default.

**Discussion**

**I.      Factual allegations**

Petitioner John Varndell, Jr. is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. On July 2, 2021, following a four-day jury trial in the St. Clair County Circuit Court, Petitioner was convicted of one count of involuntary manslaughter, in violation of Mich. Comp. Laws § 750.321, two counts of use of a firearm during commission of a felony (felony firearm), in violation of Mich. Comp. Laws § 750.227b, one count of possession of a firearm by a felon, and one count of possession of ammunition by a felon, in violation of Mich. Comp. Laws § 750.224f. On August 9, 2021, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 25 to 50 years for involuntary manslaughter and 6 to 50 years for possession of a firearm and ammunition by a felon, to be served consecutively to two concurrent sentences of 5 years for felony firearm.

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> A jury convicted John Frederick Varndell, Jr. . . . for the shooting death of his 11-year-old stepson during a deer hunt.
>
> * * *
>
> Varndell exhibited a reckless disregard for life and had the ability to avoid causing harm. He engaged in risky behavior with a firearm in the dark and in the presence of a large group of people, including children. On the day of the shooting, Varndell and several family members were visiting rural property in Michigan. Several individuals decided to hunt deer as part of the Michigan youth hunt. Varndell supervised his 11-year-old stepson. Varndell shot a deer, but the wounded animal fled. As darkness settled in, eight people (six adults and two children) wandered into the woods to find the injured deer. Varndell was armed with a .9 millimeter

3

handgun during the search despite that he was a convicted felon whose right to carry a firearm had not been restored. Moreover, Varndell concealed the weapon from his fellow hunters. And Varndell chose to arm himself and go hunting despite that he had been using marijuana throughout the day.

* * *

The prosecution presented evidence that during a youth hunt, only minors are permitted to carry a loaded weapon, not the supervising adult. Yet, Varndell fired the shot that wounded the deer. The supervising adult must have a hunting license, and must keep the youth within arm's reach at all times. Varndell was not authorized to supervise any youth hunter as he did not have a hunting license. Moreover, he did not keep his stepson within arm's reach. Rather, when the party went into the woods to search for the wounded animal, everyone spread out in a line with about 15 feet in between them. None were wearing safety orange as required by state law. The party went into the woods in the dark and after hunting hours had ended for the day.

After five to 10 minutes, the party broke into two groups. Varndell and his stepson separated, against youth hunt protocol. Shortly thereafter, Varndell walked away from his group and headed toward the other group. Before he reached them, Varndell yelled, "I got the deer." Another adult in the party replied: "Are you sure it's the deer?" Varndell responded, "Yes," and fired the .9 millimeter pistol eight times. Two of the shots struck Varndell's stepson in the head, killing him.

Clay Township Police Chief Michael Koach testified that using a pistol with fully encapsulated rounds to hunt was unusual and unsafe. A pistol is less accurate than other long-range hunting weapons, and fully encapsulated bullets tend to "go through the animal and keep travelling." It is also unusual for a hunter to shoot more than once to kill game. Chief Koach asserted that hunters should "never do anything as far as rapid fire." He further opined, "[W]hat that tells [him] is you do not have an accurate sight picture to begin with and you do not have an accurate picture of what you were aiming at."

Several witnesses testified that Varndell smoked marijuana throughout the day. Varndell reportedly smoked marijuana only 20 minutes before he fired the fatal shots and while he searched the woods for the wounded deer. Approximately four hours after the shooting, a registered nurse took a sample of Varndell's blood. The sample contained five nanograms per milliliter of Delta-9-tetrahydrocannabinol (THC), the active ingredient in marijuana, and 25 nanograms per milliliter of carboxy THC, the inactive metabolite caused by the body breaking down THC. The prosecution presented evidence that THC concentration is at its highest five to 15 minutes after an individual smokes marijuana. Experts agree that marijuana can impact an individual's judgment and reaction times. Further, witnesses informed the jury that it is illegal to hunt under the influence. Despite the witness testimony and the positive blood tests, Varndell denied using any substances that day. . . .

4

> Later investigation into the circumstances of the shooting revealed that Varndell fired his weapon in the dark, outside of legal hunting hours. Moreover, the location of the spent bullet casings suggested that Varndell did not fire in a direct line and was instead moving the pistol around as he shot.
>
> Ultimately, the evidence demonstrated that Varndell was intoxicated by marijuana and covertly carrying a loaded pistol when he went into the woods, after dark, with a group of eight people, including children. Despite knowing that his fellow searchers were spread throughout the woods and not wearing safety orange, Varndell began shooting into the dark when he thought he saw the deer. Varndell swayed with intoxication as he rapidly fired eight rounds.

*People v. Varndell*, No. 358307, 2022 WL 17170191, at *1–3 (Mich. Ct. App. Nov. 22, 2022) (citations and footnote omitted).

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals, raising one issue: the prosecution failed to present sufficient evidence to support a finding that Petitioner acted with the gross negligence necessary to convict him of involuntary manslaughter. *Id*., at *1. By opinion issued November 22, 2022, the Michigan Court of Appeals rejected Petitioner's challenge and affirmed his convictions and sentences.

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court. (Appl., ECF No. 1-1, PageID.60–72.) Petitioner raised the sufficiency of the evidence challenge and two new issues: ineffective assistance of trial and appellate counsel and judicial bias. (*Id*.) The Michigan Supreme Court denied leave to appeal by order entered April 4, 2023. *People v. Varndell,* 986 N.W.2d 919 (Mich. 2023).

On July 24, 2023, Petitioner filed a motion to disqualify the trial judge in the St. Clair County Circuit Court. *See* https://www.stclaircounty.org/Offices/63 (select "Court Schedules and Case Records Search," indicate agreement to terms and conditions and select "Continue," enter Last Name "Varndell" and First Name "John," select "Search," select Case ID "20-001666-FH") (last visited June 25, 2026). Petitioner then filed additional motions and briefs. *Id*. By opinion and order entered December 21, 2023, the court construed Petitioner's motion as a motion for relief

5

from judgment under Mich. Ct. R. 6.500 et seq. and denied relief. (Op. & Order, ECF No. 1-1, PageID.172–178.) Petitioner continued to file similar motions, but the court denied them as untimely, to the extent they sought reconsideration, or otherwise outside the scope of Mich. Ct. R. 6.501. (Op. & Order, ECF No. 1-1, Page ID.179.)

On June 27, 2024, Petitioner filed an application for leave to appeal the trial court's denial of his motions for relief from judgment. *See* https://www.courts.michigan.gov/case-search/ (enter "John Varndell," select search, select "PEOPLE OF MI V JOHN FREDERICK VARNDELL JR" under COA #371475) (last visited June 25, 2026). By order entered December 23, 2024, the Michigan Court of Appeals denied leave to appeal. *Id*. Petitioner did not seek leave to appeal to the Michigan Supreme Court. *Id*.; (Pet., ECF No. 1, PageID.4, 5.)

By order entered July 1, 2025, the trial court reconsidered the motions Petitioner filed subsequent to the court's December 21, 2023 order denying post-conviction relief. (Order, ECF No. 1-1, PageID.180.) The trial court again denied relief, specifically stating that Petitioner's subsequent requests for relief did not qualify as permissible successive motions for relief from judgment under the Michigan Court Rules. (*Id*.)

On December 16, 2025, Petitioner filed his habeas corpus petition. The petition raises two grounds for relief, as follows:

1. Amendment (VI)—was not allowed [by] counsel to properly get evidence put on the record to prove my case

2. Amendment XIV—my due process rights are being violated

(Pet., ECF No. 1, PageID.5, 7.) Petitioner acknowledges that these issues, as raised in the petition, were not properly raised on his direct appeal. (*Id*., PageID.5–7.) It appears the issues were raised in Petitioner's post-conviction motions for relief from judgment even though Petitioner now contends they were not. (*Id*.)

6

## II.    Exhaustion of state court remedies

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138–39.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner acknowledges that he did not fairly present his habeas issues on direct appeal.[1]

---

[1] Petitioner indicates that he raised his ineffective assistance of trial and appellate counsel issues for the first time when he filed his application for leave to appeal to the Michigan Supreme Court on his direct appeal. (Pet., ECF No. 1, PageID.2.) Presentation of an issue for the first time on discretionary review to the state supreme court does not fulfill the requirement of "fair presentation." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Applying *Castille*, the Sixth Circuit has recognized that a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals but raises it for the first time on discretionary appeal to the state's highest court. *See Hickey v. Hoffner*, 701 F. App'x 422, 425 (6th Cir. 2017); *Skinner v. McLemore*, 425 F. App'x 491, 494 (6th Cir. 2011); *Thompson v. Bell*, 580 F.3d 423, 438 (6th Cir. 2009); *Warlick v. Romanowski*, 367 F. App'x 634, 643 (6th Cir. 2010). Unless the state supreme court actually grants leave to appeal and reviews the issue, it remains unexhausted in the state courts. Petitioner's application for leave to appeal was denied, and, thus, the issues were not reviewed.

The petition indicates that Petitioner raised his habeas claims in his motion(s) for relief from judgment. But, he never fairly presented them to the Michigan Supreme Court. He abandoned his pursuit of appellate relief after the Michigan Court of Appeals denied leave to appeal.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner no longer has the right to raise his habeas grounds in the state courts. The time to file an application for leave to appeal to the Michigan Supreme Court expired. Under Michigan law, a party in a criminal case has 56 days after the court of appeals has entered an order or opinion resolving an appeal or original action to file an application for leave to appeal to the Michigan Supreme Court. *See* Mich. Ct. R. 7.305(C)(2)(a).

Moreover, Petitioner cannot return to the state courts and fix the error. Under Michigan Court Rule 6.502(G), Petitioner is permitted to file one, and only one, motion for relief from judgment. *See, e.g., Daniels v. Kawalski*, No. 19-1891, 2020 WL 628476, at *4 (6th Cir. Jan. 7, 2020) ("[Petitioner] also could not return to the state courts and raise these claims in a second or successive motion for relief from judgment because Michigan Court Rules allow for 'one and only one motion for relief from judgment . . . with regard to a conviction.' Mich. Ct. R. 6.502(G)(1)."). There are exceptions for motions based on new evidence or a retroactive change in law, Mich. Ct. R. 6.502(G)(2), but the trial court has already concluded that Petitioner's requests for relief do not qualify and, as he describes those claims in his habeas petition, they are not based on new evidence or a retroactive change in the law.

The absence of an available state remedy forgives Petitioner's failure to exhaust, but it also creates a procedural default. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) ("This rule [that the federal court may address the petition if the state court did not clearly and expressly

rely on an independent and adequate state ground] does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims."); *Cone v. Bell*, 243 F.3d 961, 967 (6th Cir. 2001) (citing *Coleman* and stating that "[i]f the claims presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred"), *rev'd on other grounds*, 535 U.S. 635 (2002).

### III.    Petitioner's procedural default bars habeas relief

Because Petitioner has procedurally defaulted his claims, the Court cannot consider them unless Petitioner establishes cause for his failure timely to present the issues and resulting prejudice or by showing that the Court's consideration is necessary to avoid a miscarriage of justice. *Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (citing *Coleman*, 501 U.S. at 749–50); *see also Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (noting that the court has "the option . . . to excuse a procedural default and review a defaulted claim on the merits if a petitioner demonstrates '(1) cause for the default and actual prejudice, or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice'" (quoting *Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004))).

#### A.    Cause

To show cause sufficient to excuse a failure to raise claims, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim. *See Gray v.*

*Netherland*, 518 U.S. 152, 162 (1996). Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

The only "cause" offered by Petitioner is that he is "a lay person" and "didn't know." (Pet., ECF No. 1, PageID.6–7.) "[I]gnorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse [a] procedural default." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Petitioner cannot establish the requirements to overcome his procedural default.

### B.      Miscarriage of justice

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. *In Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Schlup*, 513 U.S. at 321.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory

10

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner suggests that he may be actually innocent. That claim is based on an argument that his conduct was only negligent—not grossly negligent—so that he is innocent of involuntary manslaughter. It was undisputed that Petitioner fired the gun that killed the victim. Petitioner does not offer any evidence to call into question that fact. Indeed, he does not offer any new evidence at all. At best, he continues the argument regarding legal sufficiency raised and rejected on direct appeal. Accordingly, the Court concludes that Petitioner has failed to establish that barring habeas review here will result in a miscarriage of justice.

In short, Petitioner has procedurally defaulted the claims raised in his habeas petition. He has not shown cause or prejudice to excuse the default or a resulting miscarriage of justice that might permit the Court to overlook the default. Petitioner's state procedural default bars federal habeas review. The petition will be dismissed.

## IV.    Motion to stay these proceedings and hold them in abeyance

In a two-sentence motion, Petitioner asks the Court to stay these proceedings and hold them in abeyance so that he may "further exhaust [his] state remedies." (Mot., ECF No. 3, PageID.232.) For the reasons set forth above, the Court concludes that further efforts to exhaust state court remedies will not remedy the procedural default that precludes habeas relief. Accordingly, Petitioner's motion will be denied.

## V.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

11

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason . . . could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reason, the Court concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment dismissing the petition and an order granting Petitioner leave to proceed *in forma pauperis*, denying his motion to stay these proceedings and hold them in abeyance, and denying a certificate of appealability.

Dated:  July 2, 2026                                    /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        United States Magistrate Judge